IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| FABIO OCHOA-VASQUEZ, | |
| Petitioner, | CIVIL ACTION NO.: 2:23-cv-125 |
| v. | |
| WARDEN SWANEY, | |
| Respondent. | |

# REPORT AND RECOMMENDATION

Petitioner Fabio Ochoa-Vasquez ("Ochoa-Vasquez"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus.[1]  Doc. 1.  Respondent filed a Motion to Dismiss, and Ochoa-Vasquez filed a Response.  Docs. 5, 11, 12.  For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DISMISS without prejudice** Ochoa-Vasquez's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Ochoa-Vasquez *in forma pauperis* status on appeal.

## BACKGROUND

Ochoa-Vasquez was convicted in the District Court for the Southern District of Florida of conspiracy to distribute with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and conspiracy to import five kilograms or more of cocaine into the United States, in violation of 21 U.S.C. § 963.  Ochoa-Vasquez was sentenced to 365 months in prison.

---

[1] Ochoa-Vasquez refers to himself as "Fabio Ochoa" at times and as "Ochoa-Vasquez" at other times.  See, e.g., Doc. 15 at 1.  It appears the Bureau of Prisons ("BOP") lists Petitioner's name as "Ochoa-Vasquez," which is how the Court will refer to Petitioner.

Doc. 5-1 at 7.  Ochoa-Vasquez has a statutory release date of September 14, 2025, via good conduct release, and a projected release date of September 14, 2024, via First Step Act ("FSA") release.  Id.  Ochoa-Vasquez also has a home detention eligibility date of March 14, 2024.  Id.

In his Petition, Ochoa-Vasquez asserts the Bureau of Prisons ("BOP") has not properly credited his sentence under the FSA and he should be released immediately.  Doc. 1 at 2, 8.  Respondent states this Court should dismiss Ochoa-Vasquez's Petition because he failed to exhaust his administrative remedies regarding the claims he raises in this Petition, cannot challenge the BOP's determinations made under the Administrative Procedures Act, and does not have a liberty interest in FSA credits or an early release.  In addition, Respondent states the BOP has exclusive authority to determine Ochoa-Vasquez's place of confinement, which is not reviewable.  Doc. 5.

## DISCUSSION

I. **Ochoa-Vasquez Did Not Exhaust Available Administrative Remedies**

A. **Legal Requirements for Exhaustion**

The Eleventh Circuit Court of Appeals has held a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect.  Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional.").  Nevertheless, the Eleventh Circuit has noted "the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . .'"  Id. (citing Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015)).  Additionally, the United States Supreme Court has "held that the PLRA's ["Prison Litigation Reform Act's"] text

2

suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 578 U.S. 632, 639 (2016).

Exhaustion of administrative remedies must occur first in the agency setting to allow "the agency [to] develop the necessary factual background upon which decisions should be based" and to give "the agency a chance to discover and correct its own errors." Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000); Varner v. Shepard, 11 F.4th 1252, 1264 (11th Cir. 2021) (noting there is no futility exception for the PLRA's

---

[2] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006) (internal punctuation omitted)). Thus, exhaustion requirements are applicable to habeas petitions.

exhaustion of administrative remedies requirement), cert. denied, 142 S. Ct. 1172 (2022). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Higginbottom, 223 F.3d at 1261.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

B.      **Standard of Review for Exhaustion**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because exhaustion "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" lower courts must employ when examining the issue of exhaustion of

4

administrative remedies.[3]  First, the court is to take the plaintiff's version of the facts regarding exhaustion as true.  Id. at 1082.  If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed.  Id.  However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true.  Id.  Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]"  Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  Id. at 1083.  The Eleventh Circuit has held a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  See Bryant, 530 F.3d at 1376–77.

      C.      **Analysis of Ochoa-Vasquez's Efforts at Exhaustion**

Respondent asserts Ochoa-Vasquez has not initiated, much less exhausted, his administrative remedies concerning the claims he raises in his Petition.  Doc. 5 at 4.  Respondent also asserts Ochoa-Vasquez admits he abandoned the remedies process before completing all steps, conceding he failed to exhaust his administrative remedies.  Id.

Ochoa-Vasquez concedes he has not exhausted his administrative remedies.  But he states prison staff experienced many challenges in the implementation of the FSA and the BOP has not "swiftly calculate[d] and accurately appl[ied] earned" credits, which is why he "abandoned" his

---

[3]     Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner is no less applicable to a § 2241 proceeding. See Nichols v. Warden, FCC Coleman-Low, 458 F. App'x 844, 845 (11th Cir. 2012) (finding exhaustion is jurisdictional in § 2241 decisions and remanding with instructions to dismiss); see also McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition).

5

administrative remedies at the BP-9 stage.  Doc. 1 at 11.  Ochoa-Vasquez essentially asks the Court to excuse him from completing the administrative remedy process.

The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment.  28 C.F.R. § 542.10 *et seq*.  The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP.  § 542.10(b).  Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff.  § 542.13(a).  If this does not resolve the matter, an inmate must submit a formal written administrative remedy request ("BP-9") within 20 calendar days of the incident giving rise to the grievance.  § 542.14(a).  If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response.  § 542.15(a).  If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11") to the BOP's Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response.  Id.  Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process.  Id.  Inmates must complete all three steps of the administrative remedies process to have exhausted his administrative remedies.  A submission at any of these levels can be rejected, with notice to the inmate why the submission was rejected and, if correctable, to allow the inmate a reasonable time for re-submission.  § 542.17(b).

It is undisputed Ochoa-Vasquez did not complete the administrative remedies process regarding his request for earned time credit raised in his Petition before he filed his Complaint.  Ochoa-Vasquez has filed four formal administrative remedies requests during his period of incarceration, but none of the requests concern the issue he raises in his Petition.  Doc. 5-1 at 11

(reflecting three grievances concerning Ochoa-Vasquez's release from the Special Housing Unit and one concerning an inoperable copier in the education department). Ochoa-Vasquez did file an informal resolution request regarding his request for FSA credits on August 28, 2023, and he received a response almost immediately. Doc. 1-1 at 9–11. It appears on November 7, 2023, Ochoa-Vasquez attempted to initiate the formal grievance process with a BP-9. Doc. 12 at 30–31. It further appears the BP-9 form was returned to Ochoa-Vasquez with a note explaining he needed to include his informal grievance paperwork with the BP-9 form, and he had failed to do so. Id. There is noting in the record suggesting Ochoa-Vasquez pursued administrative remedies further. Ochoa-Vasquez vaguely suggests he might have tried to submit other informal requests or, perhaps, some other grievance forms, but he fails to describe those efforts with any specificity. Ochoa-Vasquez signed his Petition 21 days later, on November 29, 2023, and the Petition was received by the Court on December 5, 2023.

The evidence before the Court shows Ochoa-Vasquez started the administrative remedies process regarding his FSA credit calculation, but he did not complete it, as required. It is clear Ochoa-Vasquez only initiated an informal request for administrative remedies, and he possibly tried to initiate a formal request, but failed to properly submit that request. Even if Ochoa-Vasquez's attempt to initiate a formal request had been proper, the record is clear Ochoa-Vasquez took no further steps, as he was required to do. Therefore, Ochoa-Vasquez's Petition should be dismissed for failure to exhaust his administrative remedies. Perez v. Joseph, Case No. 3:22cv2055, 2022 WL 2181090, at *2, *3 (N.D. Fla. May 4, 2022) (noting a petitioner must exhaust administrative remedies before challenging FSA earned credits calculations in federal court), report and recommendation adopted, 2022 WL 2176505 (M.D. Fla. June 15, 2022).

Ochoa-Vasquez acknowledges he failed to complete the administrative remedies process, but he argues the Court should excuse exhaustion requirement because the administrative remedies process was futile and, alternatively, unavailable. Doc. 1 at 14 (noting courts have discretion to waive exhaustion when doing so would be futile or an irreparable injury would result); Doc. 11 at 19 (arguing administrative remedies were unavailable, citing Ross v. Blake, 578 U.S. 632, 639 (2016)). Ochoa-Vasquez's arguments fail, and the Court should not excuse the requirement of exhaustion of administrative remedies.

Ochoa-Vasquez's argument that administrative remedies would have been "futile" fails. There is "no futility exception applicable to the exhaustion requirement in a § 2241 proceeding." Perez, 2022 WL 2181090, at *2; see also Ross, 578 U.S. at 639; Higginbottom, 223 F.3d at 1261; Varner, 11 F.4th at 1264; Penalosa v. Stone, CV322-041, 2022 WL 11456512, at *3 (S.D. Ga. Sept. 22, 2022) (collecting cases for the finding "courts considering the issue of calculation of time credits under the [FSA] have enforced exhaustion requirements and rejected futility arguments[]"), adopted by 2022 WL 11429299 (S.D. Ga. Oct. 19, 2022). "Even if a futility exception existed," Ochoa-Vasquez fails to show "any extraordinary circumstances warranting application" of the exception. Penalosa, 2022 WL 11456512, at *3 (citing Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994)).

Ochoa-Vasquez's contention that administrative remedies were unavailable under Ross also fails. Ochoa-Vasquez offers only generalized and conclusory statements and falls far short of demonstrating administrative remedies were unavailable to him. Ochoa-Vasquez asserts the remedies process became unavailable because there was a staff shortage, staff "mangled" two infectious disease outbreaks, the copiers were broken or ran out of toner, and inmates were in lockdown for weeks. Doc. 11 at 5–6. He states he "handed in his BP-10 several times," but it

8

was not filed.  Id. at 6.  Ochoa-Vasquez does not, however, show administrative remedies were unavailable within the meaning of Ross.  Geter v. Baldwin State Prison, 974 F.3d 1348, 1355 (11th Cir. 2020) (noting Ross enumerated three circumstances where administrative remedies are unavailable: the procedure operates as "a simple dead end" when staff are unwilling to provide requested relief; the scheme is "so opaque" it is incapable of use; and when staff "thwart inmates" from using the process through "machination, misrepresentation, or intimidation." (quoting Ross, 578 U.S. at 643–44)).  Ochoa-Vasquez attached several emails to his Response, and these emails (based on the provided translations) appear to show Ochoa-Vasquez tried to obtain his requested relief, but only on an informal basis.  Doc. 11 at 11–27.

        The timeline of the Ochoa-Vasquez's efforts at exhaustion demonstrates Ochoa-Vasquez simply rushed to file suit before completing the administrative remedies process.  Ochoa-Vasquez explains he submitted a BP-9—the first step in the formal administrative remedies process—on November 7, 2023.  Doc. 12 at 30–31.  That BP-9 was rejected because Ochoa-Vasquez did not attach his informal remedy request to the BP-9.  Id.  Even if Ochoa-Vasquez's BP-9 had been properly filed, the Warden's response to that request was not due until November 27, 2023, at the earliest.  28 C.F.R. § 542.18 (requiring the warden to respond within 20 days of the response and allowing a 20-day extension in certain circumstances and noting a lack of response from the warden can be deemed a denial at that level).  Ochoa-Vasquez's Petition is dated November 29, 2023.  Doc. 1 at 11.  Nothing indicates Ochoa-Vasquez received a response by November 29, 2023, or that Ochoa-Vasquez appealed the lack of response.  Considering this timeline, Ochoa-Vasquez could not have completed his administrative remedies—including appealing any denial—by November 29, 2023 or December 5, 2023, the date the Petition was received by this Court.  And nothing in the record indicates Ochoa-Vasquez pursued the

9

grievance process beyond the one failed attempt at the BP-9 level, even after the Petition was filed.

Consequently, the Court should **GRANT** Respondent's Motion and **DISMISS without prejudice** Ochoa-Vasquez's Petition based on his failure to exhaust his available administrative remedies prior to the filing of his § 2241 Petition.  It is unnecessary to address the remaining grounds of Respondent's Motion.  Holdago v. United States, Civil Action No.: 5:19-cv-9, 2019 WL 5681217, at *3 (S.D. Ga. Oct. 31, 2019) (finding it unnecessary to address alternative grounds in motion for dismissal where petitioner failed to exhaust his available administrative remedies), adopted by 2019 WL 6353869 (S.D. Ga. Nov. 26, 2019).

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Ochoa-Vasquez leave to appeal *in forma pauperis*.  Though Ochoa-Vasquez has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x

10

321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Ochoa-Vasquez's Petition and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DISMISS without prejudice** Ochoa-Vasquez's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Ochoa-Vasquez *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in

whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 23rd day of April, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA